## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CASE NO. 5:17-cv-00006-RLV-DSC

KAY SEBASTIAN and MICHAEL ) 
DOBRZYNSKI, )
 )
Plaintiffs, )
 )
v. )                    **ORDER**
 )
DAVOL, INC. and C.R. BARD, INC., )
 )
Defendants. )
 )

      **THIS MATTER IS BEFORE THE COURT** on Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction (Doc. 4) and Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 11). Defendants previously filed a Motion to Dismiss (Doc. 4) but Plaintiffs responded by filing an Amended Complaint (Doc. 8). Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) has been fully briefed (Docs. 5, 12-14), and is now ripe for disposition. For the reasons stated below, Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction (Doc. 4) is **DENIED AS MOOT**, and Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.

## I.     NATURE OF THE CASE

      Plaintiff Kay Sebastian and Plaintiff Michael Dobrzynski claim injuries after their respective surgical implantations of Defendant C.R. Bard, Inc.'s ("Bard") and Defendant Davol, Inc.'s ("Davol") Composix Kugel Hernia Patch device ("Composix Kugel") to repair ventral hernias. (Doc. 8 at 10-15). Both Plaintiffs later had their Composix Kugels removed. (*Id.* at 10-15). Defendant Davol — which is incorporated in Delaware and has its principal place of business in Rhode Island (*id.* at 1; *see* Doc. 12 at 13) — designed, manufactured, promoted, and sold the

Composix Kugel. (*Id.* at 1-2). Defendant Bard — which is incorporated and has its principal place of business in New Jersey — is the corporate parent of Davol. (*Id.* at 2; *see* Doc. 12 at 13).

In 2001, the Food and Drug Administration ("FDA") authorized the Composix Kugel as a Class II medical device "for use in hernia repairs requiring reinforcement with a non-absorbable support material." (Doc. 8 at 3-4). The Composix Kugel consists of two surfaces and a "memory recoil ring" ("Ring"). (*Id.* at 4). One surface, which faces inward, is made of polypropylene mesh. (*Id.*) Plaintiffs allege that polypropylene mesh is incredibly adhesive, and can cause serious injury when it comes into contact with the gastrointestinal system. (*Id.*). The second surface, which faces outward, operates as a shield between the adhesive mesh and the gastrointestinal system. (*Id.*) The Ring is designed to prevent injury by helping to bind the Composix Kugel together in order to keep the adhesive side away from the gastrointestinal system. (*Id.*). However, the Ring's weld can malfunction, causing the Composix Kugel's adhesive mesh to contact the gastrointestinal system. (*Id.* at 4-5).

Plaintiffs allege that, by 2003, Defendants were on notice of the Ring's potential to malfunction at the weld. (*Id.* at 6). In August 2005, Defendants initiated a partial distribution hold on the Composix Kugel following a "growing number of complaints regarding complications." (*Id.* at 6-7). In 2006, the FDA issued an Establishment Inspection Report, which showed that Defendants failed to include all data submitted by surveyed physicians about the Composix Kugel, concealed information about physicians' concerns regarding the Composix Kugel, and failed to properly monitor their own post-market design validation surveys. (*Id.* at 6). Between December 2005 and January 2007, Defendants announced four recalls for various sizes of the Composix Kugel. (*Id.* at 7).

Plaintiffs seek to recover for their injuries allegedly resulting from design defects with the Composix Kugel. (*Id.* at 11, 15). Plaintiffs bring claims for: (1) negligence; (2) violations of North Carolina's and Wisconsin's Unfair and Deceptive Trade Practices Acts ("UDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq.* (North Carolina), Wis. Stat. § 100.18, *et seq.* (Wisconsin); (3) negligent misrepresentation; (4) fraud; (5) breach of express warranty; and (6) breach of implied warranties in relation to the defective design, manufacture, and warnings of the Composix Kugel. (*Id.* at 16-32). Plaintiffs seek economic and non-economic damages in excess of $75,000; compensatory, treble, and punitive damages; attorneys' fees and costs; and prejudgment interest. (*Id.* at 34). Defendants move to dismiss (1) Plaintiff Sebastian's claims pursuant to Fed. R. Civ. P. 12(b)(6) based on the expiration of the statute of limitations and (2) Plaintiff Dobrzynski's claims pursuant to Fed. R. Civ. P. 12(b)(2) based on this Court's alleged lack of personal jurisdiction over Defendants relative to Dobrzynski's claims. (Docs. 11, 12).[1]

## II.   PLAINTIFF KAY SEBASTIAN'S CLAIMS

### A.   Standard of Review for a Rule 12(b)(6) Motion

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). For purposes of a motion to dismiss, a court must accept as true all of the well-pleaded factual allegations contained in the complaint and should view the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

---

[1] Defendants previously filed a Motion to Dismiss Complaint for Lack of Jurisdiction (Doc. 4), which prompted Plaintiffs to file an Amended Complaint (Doc. 8). In filing their most recent Motion to Dismiss (Doc. 11), Defendants assert the same grounds for dismissal as those contained in their previous Motion. Accordingly, Defendants' initial Motion to Dismiss (Doc. 4) will be denied as moot and this Court will only evaluate the grounds for dismissal presented in the most recent Motion to Dismiss (Doc. 11). *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect.").

"A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the [c]omplaint that such statute bars the claim." *Koehler v. Rite-Aid Pharmacy*, 2012 WL 896144, at *2 (W.D.N.C. Mar. 15, 2012) (quoting *Horton v. Carolina Medicorp, Inc.*, 472 S.E.2d 778, 780 (N.C. 1996) (citing *Hargett v. Holland*, 447 S.E.2d 784, 786 (N.C. 1994))). A federal court sitting in diversity generally applies the statute of limitations which would be applied by a court of the forum state. *Stokes v. SE Hotel Props., Ltd.*, 877 F. Supp. 986, 994-96 (W.D.N.C. 1994) (concluding that "because the forum state North Carolina deems its statutes of limitations to be procedural, this Court must treat them as such and apply them in this case"); *see Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir. 1984). Accordingly, Defendants' and Sebastian's briefing cite North Carolina limitations statutes. (*See* Doc. 12 at 6; Doc. 13-1 at 4). "Although the accrual date of a cause of action is a factual inquiry typically reserved for a jury, the district court may resolve that inquiry itself if the facts presented provide a clear basis for such a determination." *Morley v. North Carolina Dep't of Health and Human Servs.*, 171 F. Supp. 2d 585, 592 (W.D.N.C. 2001) (quoting *Wood v. Virginia*, 155 F.3d 564 (4th Cir. July 23, 1998) (Table) (unpublished per curiam)).

B.    Analysis

The facts construed in the light most favorable to Plaintiff Kay Sebastian are as follows. In 2006, a surgeon implanted Sebastian, a North Carolina resident, with a Composix Kugel in order to repair a ventral hernia. (Doc. 8 at 1, 10). Following the implantation, Sebastian began to feel ill. (*Id.*) Sebastian's symptoms after the implantation were "more frequent and diverse" than symptoms she had previously experienced from diverticulitis, but her new symptoms were still consistent with symptoms associated with diverticulitis. (*Id.*).

In 2013, Sebastian was diagnosed with a recurrent ventral hernia, and doctors planned a "revision surgery" to address the previous hernia repair. (*Id.*). However, before the scheduled date of the "revision surgery," Sebastian went to the emergency room due to nausea, abdominal pain, and vomiting. (*Id.* at 11). Sebastian was diagnosed with acute diverticulitis, given medication to help treat diverticulitis, and sent home. (*Id.*). A June 2013 CT scan following the cancellation of Sebastian's "revision surgery" showed acute diverticulitis. (*Id.*). A CT scan the next month found no evidence of a recurrent ventral hernia that was previously suspected. (*Id.*). Sebastian did not undergo the "revision surgery" in 2013. (*Id.*). Sebastian's condition improved in the following weeks, and the symptoms that led to her emergency room visit were attributed to a bout of diverticulitis. (*Id.*).

In February 2015, Sebastian was admitted to the hospital following complaints of severe abdominal pain and constipation. (*Id.*). Doctors discovered she was suffering from a colonic stricture with cecal ischemia secondary to severe dilation, serosal injuries to the cecum, and a recurrent ventral hernia.[2] (*Id.*). Plaintiff alleges that the Composix Kugel caused her injuries. (*Id.*). A doctor performed an exploratory laparotomy with sigmoid colectomy on Sebastian, repaired her colonic stricture, created a colostomy, and removed the Composix Kugel.[3] (*Id.*).

This Court has diversity jurisdiction over Sebastian's action pursuant to 28 U.S.C. § 1332(a), as the amount in controversy is greater than $75,000 and there is complete diversity among the parties. 28 U.S.C. § 1332(a). Therefore, the relevant North Carolina statute of limitations will apply to each claim. *See Stokes*, 877 F. Supp. at 994-96. In support of their Motion

---

[2] A "colonic stricture" is a narrowing of part of the colon. *Colonic*, *stricture*, Stedman's Medical Dictionary (28th ed. 2006). "Cecal ischemia" refers to the loss of blood flow due to the cecum, which forms the first part of the large intestine. *Cecum*, *ischemia*, Stedman's Medical Dictionary (28th ed. 2006).

[3] An "exploratory laparotomy" is a surgical procedure where the abdomen is opened to allow for examination of the abdominal organs. *Exploratory*, *laparotomy*, *celiotomy*, Stedman's Medical Dictionary (28th ed. 2006). A "colostomy" is an artificial path created between the colon and the skin which creates an alternative route for feces to exit the body. *Colostomy*, Stedman's Medical Dictionary (28th ed. 2006).

to Dismiss, Defendants assert that Plaintiff Sebastian's claims are all barred by the applicable statutes of limitations. (Doc. 12 at 6; Doc. 14 at 3).

> i.    *Personal Injury Rooted in Negligence Claim*

The statute of limitations for a personal injury claim rooted in negligence is three years. N.C. Gen. Stat. § 1-52(5). A cause of action for negligence accrues when "bodily harm to the claimant or physical damage to [her] property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C. Gen. Stat. § 1-52(16). "The Supreme Court of North Carolina has explained that this statute 'establishes what is commonly referred to as the discovery rule, which tolls the running of the statute of limitations for torts resulting in certain latent injuries'." *Stahle v. CTS Corp.*, 817 F.3d 96, 98 (4th Cir. 2016) (quoting *Misenheimer v. Burris*, 637 S.E.2d 173, 175-76 (N.C. 2006)). Therefore, if Sebastian's negligence cause of action became apparent or ought reasonably to have become apparent to her prior to January 4, 2014 (three years before she filed this suit), her action is barred by the statute of limitations. N.C. Gen. Stat. § 1-52(16); (Doc. 1).

Defendants present two arguments that Sebastian's negligence cause of action accrued in or around 2006, although only developing one argument fully. First, Defendants point to the Amended Complaint's allegation that Sebastian began feeling ill after her Composix Kugel implant in 2006 "but she noted her new symptoms, although similar to the ones previously experienced due to the diverticulitis, were more frequent and diverse." (Doc. 12 at 7; Doc. 8 at 10 (Amended Complaint allegation)). Defendants do not directly develop an argument that these new symptoms triggered accrual of the limitations period in 2006. At most, Defendants reference the Amended Complaint's allegations regarding the 2006 "new symptoms" and Sebastian's scheduled May 2013 revision surgery (see below) to conclude that "[t]he plain reading of these allegations

indicates that, by no later than May 2013, Plaintiff and her physician thought that there was a connection between Plaintiff's symptoms and the Composix Kugel and that is why the product was scheduled to be removed." (*See* Doc. 14 at 3). Defendants' argument in this respect focuses on events in 2013, not 2006. (*See* Doc. 12 at 7-8).

Here, the existence of Sebastian's new symptoms after her 2006 surgery alone does not shine any light on what caused those symptoms. Sebastian alleges that, although her new symptoms were more frequent and diverse, they were "similar to the ones previously experienced due to the diverticulitis." (Doc. 8 at 10). At this stage of the litigation, and viewing the facts alleged in the light most favorable to Sebastian, the new post-implantation symptoms she experienced can just as readily be attributed to her diverticulitis as to the Composix Kugel. Therefore, this Court does not consider Sebastian's new post-implantation symptoms to have brought about accrual of her cause of action.

Second, Defendants argue that the Establishment Inspection Report ("EIR") and Defendants' recalls of various sizes of the Composix Kugel "only add to Plaintiff Sebastian's awareness that the product was the possible cause of her alleged injuries." (Doc. 12 at 7-8). Defendants claim that both the EIR and information regarding some of their product recalls were publicly available as early as 2006, which in turn ought reasonably to have put Sebastian on notice of her injury and its cause in 2006. (*Id.* at 7-8). Sebastian argues that she had no reason to know of either the recall or the EIR in 2006 because "neither her doctor nor the Defendants notified her that she had received a product that was recalled just days following the implant procedure." (Doc. 13-1 at 3-4). Therefore, Sebastian claims her cause of action did not accrue because of the recalls and the EIR. (*Id.* at 6-7).

The proposition that an announcement made to the public, released without much fanfare, should automatically put every member of the public on notice of the contents of that announcement is not intuitive to this Court. Thus, Defendants must back up their argument here with persuasive authority. Defendants do not cite to any case law or other persuasive authority which supports the proposition that information which is publicly available ought reasonably to put a specific individual on notice of her injury and the cause of her injury. (*See* Doc. 12 at 7-8). It is not the job of this Court to locate persuasive authority in support of a party's position; that role falls to the parties themselves. *Cf. Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 324-25 (4th Cir. 2017) (declaring that, for the purpose of a motion for summary judgment, the responsibility to find record support for the parties' positions is delegated to the parties, not to the Court). Since Defendants have not cited to any relevant case law or other persuasive authority to support their assertion that an announcement to the public should put every member of the public on notice of the content of the announcement, and because there is no evidence at this stage showing that Sebastian received the notice prior to January 4, 2014, Defendants have not established that the public announcement of the EIR and some recalls of the Composix Kugel "ought reasonably to have" made Sebastian's cause of action apparent to her in or around 2006.

Defendants also argue that Sebastian's knowledge of the planned "revision surgery" gave her actual knowledge that her bodily harm was potentially caused by a defect in the Composix Kugel, so her cause of action accrued no later than when she was scheduled for the "revision surgery" in May 2013. (Doc. 12 at 7-8). Additionally, Defendants argue that Sebastian's awareness of the scheduling of her "revision surgery," despite its ultimate cancellation, ought reasonably to have exposed her to the potential connection between the Composix Kugel and her injuries, triggering the accrual of the cause of action in 2013. (Doc. 14 at 3). Sebastian claims

that she did not have actual knowledge of the potential connection until the removal of her Composix Kugel in 2015. (Doc. 13-1 at 7).

Sebastian's action can only be barred by the statute of limitations by way of *actual knowledge* if it became subjectively apparent to her that the purpose of the "revision surgery" was to fix problems caused by a defect of the Composix Kugel or to remove the Composix Kugel altogether. N.C. Gen. Stat. § 1-52(5), (16). Defendants attempt to equate Sebastian's planned "revision surgery" with removal of the Composix Kugel. (*See* Doc. 12 at 7 ("She alleges that in May 2013 she was scheduled to have surgery to *remove (a revision)* the Composix Kugel." (emphasis added)); *see also* Doc. 14 at 3 ("[I]n May 2013 she was scheduled to have surgery to remove the Composix Kugel.")). While the term "revision surgery" can be accurately used to refer to the removal of a previously implanted object, the term also more broadly describes all "surgery performed to replace or compensate for a failed implant . . . or to correct undesirable sequelae (as scars or scar tissue) of previous surgery." *Revision Surgery*, Merriam-Webster Medical Dictionary, available at https://www.merriam-webster.com/medical/revision%20surgery (last accessed July 25, 2017). Sebastian's knowledge of a planned "revision surgery" in 2013 does not necessitate, without more, the conclusion that she actually knew the Composix Kugel was scheduled to be removed, or that any defect with the Composix Kugel was potentially causing her recurrent ventral hernia, nausea, abdominal pain, vomiting, or acute diverticulitis. Therefore, at this stage, Defendants have not demonstrated, based on the allegations in the Amended Complaint, that Sebastian had actual knowledge of her cause of action in May 2013.

Without actual knowledge, the statute of limitations can still bar Sebastian's personal injury negligence claim if Defendants establish that Sebastian's bodily harm *ought reasonably to have become apparent* to her prior to January 4, 2014 (three years before this suit was filed). N.C. Gen.

Stat. § 1-52(16). Defendants argue that Sebastian's scheduled revision surgery in 2013 also means that she should have discovered by that time "that she was injured with the same injury she claims here — and that there was a possible connection between her injury and the product at issue." (Doc. 12 at 7). Sebastian asserts that, despite her new symptoms, she had "no way of knowing" about her cause of action until the removal of the Composix Kugel in 2015. (Doc. 13-1 at 2).

Under N.C. Gen. Stat. § 1-52(16), "[u]ntil plaintiff discovers the wrongful conduct of defendant, [he] is unaware that [he] has been injured in the legal sense." *Misenheimer v. Burris*, 637 S.E.2d 173, 177 (N.C. 2006) (quoting *Black v. Littlejohn*, 325 S.E.2d 469, 478 (N.C. 1985), in context of N.C. Gen. Stat. § 1-52(16)). "[A] person's physical manifestations of painful symptoms can often precede any awareness by the plaintiff that negligence or wrongful conduct on the part of the defendant may have been involved." *Black*, 325 S.E.2d at 480 (describing and then applying Illinois Supreme Court's interpretation of "injury" in medical malpractice statute of limitations).[4]

Defendants point to Sebastian's scheduled "revision surgery" as proof that the basis for her claim ought reasonably to have become apparent in 2013. (*See* Doc. 12 at 7). However, as detailed above with respect to consideration of actual knowledge, Sebastian's knowledge of a planned "revision surgery" does not reasonably necessitate the conclusion that she ought to have known that the Composix Kugel was scheduled to be removed or that a defect with the Composix Kugel was causing her injuries. Moreover, a June 2013 CT scan following the cancellation of Sebastian's "revision surgery" showed acute diverticulitis. (Doc. 8 at 11). A CT scan the next month found no evidence of a recurrent ventral hernia that was previously suspected. (*Id*.). Removal of the

---

[4] The North Carolina Supreme Court in *Black* addressed tolling of the statute of limitations for a medical malpractice action, which is governed by N.C. Gen. Stat. § 1-15(c), not N.C. Gen. Stat. § 1-52(16) as in this case. The language in the two statutes are sufficiently analogous for this language to apply here. *See Misenheimer*, 637 S.E.2d at 175-76.

Composix Kugel did not occur for another two years following the planned "revision surgery." (*Id.*; *see also* Doc. 13-1 at 2). When taken together, Sebastian's factual allegations represent that she reasonably believed that her health problems had subsided without needing the "revision surgery." Therefore, this Court does not view Sebastian's knowledge of the "revision surgery" as putting her on reasonable notice of her cause of action for negligence. Accordingly, at this juncture, Sebastian's claim of personal injury rooted in negligence cannot be dismissed as barred by the statute of limitations.

ii.     *Fraud and Negligent Misrepresentation Claims*

Plaintiff Sebastian also brings stand-alone claims for fraud and negligent misrepresentation. (Doc. 8 at 23-27). Fraud and negligent misrepresentation each have a three-year statute of limitations. N.C. Gen. Stat. § 1-52(5), (9). The cause of action for a fraud claim accrues either when the fraud was discovered or should have been discovered in the exercise of reasonable diligence. *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 624 (W.D.N.C. 2014) (citing *Calhoun v. Calhoun*, 197 S.E.2d 83, 85 (N.C. App. 1973)). The cause of action for negligent misrepresentation accrues when "the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation." *Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 224 (N.C. 1997) (quoting *Jefferson-Pilot Life Ins. Co. v. Spencer*, 442 S.E.2d 316, 320 (N.C. 1994)).

Defendants argue that Sebastian either subjectively knew about the issues with the Composix Kugel or should have known that there was an issue related to fraud or misrepresentation by May 2013. (Doc. 12 at 9 n.4). Sebastian responds that she did not know of the issues with the Composix Kugel until 2015, when removal of her Composix Kugel was scheduled and accomplished. (Doc. 13-1 at 7). Defendants' argument is insufficient to warrant

dismissal of Sebastian's fraud and negligent misrepresentation claims because it hinges on two assumptions which, at this stage, require factual development. First, at this stage, Sebastian's symptoms in May 2013 may have occurred as a result of diverticulitis, not the Composix Kugel. (*See* Doc. 8 at 11 ("Plaintiff Sebastian's symptoms were attributed to diverticulitis.")). Second, Sebastian was only scheduled for a "revision surgery" in 2013. (*Id.* at 10). As the term "revision surgery" does not necessitate the conclusion that Sebastian knew, or that she should have known, that the Composix Kugel was scheduled to be removed (*see Revision Surgery*, Merriam-Webster Medical Dictionary), the Court is unable at this stage to determine conclusively whether the Composix Kugel was "scheduled to be removed" in 2013.

This case, at least at the motion to dismiss stage, is procedurally and factually unlike *Driggers v. Sofamor*, 44 F. Supp. 2d 760, 764 (M.D.N.C. 1998), cited by Defendants for the proposition that a plaintiff has the capacity and opportunity to discover the fraud "when 'he suffered from severe pain immediately after the surgery' and suspected the product was causing his pain." (*See* Doc. 12 at 9 n.4). *Driggers* addressed the limitations question at the summary judgment stage and relied on plaintiff's deposition testimony. The court did not determine the limitation's period ran from when the plaintiff suspected that the implant was causing his pain but rather concluded that the limitations period began to run, at the latest, several years later, after the plaintiff consulted with his doctor about "whether or not some of the persistent pain that he was having in his lower back related to the internal fixation device . . . and . . . whether or not there was a potential necessity for removing the plate and screw from the lumbar spine." 44 F. Supp. 2d at 764 (also noting an earlier x-ray showed something in the implant had broken). Such evidence may or may not be forthcoming through discovery with respect to Sebastian, but it is not present in the Amended Complaint allegations, as Sebastian denies she "suspected the product was

causing [her] pain," unlike the case in *Driggers*. Here, the allegation is that Sebastian's CT scans taken around the time of the scheduled May 2013 surgery showed acute diverticulitis, but disclosed no evidence of a recurrent hernia that was previously suspected. (Doc. 8 at 11).

Defendants also argue that Sebastian should have known the facts constituting the alleged fraud and negligent misrepresentation by 2006, when the FDA issued the EIR and the recall of Composix Kugel expanded. (Doc. 12 at 8). This argument fails for the same reasons identified by the Court regarding Defendants' similar argument with respect to Sebastian's negligence claim.

The information contained in the pleadings, construed in the light most favorable to Sebastian, is insufficient to determine that before January 4, 2014, Sebastian either actually discovered, or should have discovered through the exercise of reasonable diligence, Defendants' fraud or negligent misrepresentations or that her injury was caused by Defendants' actions. Accordingly, this Court will not dismiss Sebastian's claims for fraud and negligent misrepresentation.

### iii. *North Carolina Unfair or Deceptive Trade Practices Act Claim*

Defendants assert that Sebastian's claim under the North Carolina UDTPA (Doc. 8 at 21-23) should be dismissed because the EIR and information about some Composix Kugel recalls were available to the public prior to January 4, 2013 (four years before Plaintiffs filed this action). (Doc. 12 at 8 (considering UDTPA claims with fraud and negligent misrepresentation claims)). The statute of limitations for a North Carolina UDTPA claim is four years after the cause of action accrues. N.C. Gen. Stat. § 75-16.2. A cause of action brought under the UDTPA for fraudulent conduct or negligent misrepresentation, where the alleged fraudulent conduct or negligent misrepresentation occurs before the violation of the UDTPA, accrues either when the fraud or misrepresentation is discovered or should have been discovered with the exercise of "reasonable

diligence." *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (fraudulent conduct); *Lawley v. Liberty Mut. Grp., Inc.*, 2012 WL 4513622, at *7 (W.D.N.C. Sept. 28, 2012) (negligent misrepresentation). Since Defendants do not reference supporting authority for their argument that a given individual, in the exercise of reasonable diligence, should discover all publicly available information, this Court declines to dismiss Sebastian's UDTPA claim.

### iv.    *Breach of Express and Implied Warranty Claims*

Defendants attempt to contest Sebastian's claim for breach of express and implied warranties in their briefing. To the extent Defendants address warranty claims when discussing Sebastian's negligence claim (Doc. 12 at 8), the Court will not dismiss the warranty claims for the same reasons the negligence claims are not dismissed. Defendants also argued, in passing, that the breach of warranty claims "also independently fail because no privity is alleged, which is a required element of such claims." (Doc. 12 at 8 n.3). A conclusory remark in a footnote is insufficient to raise an argument for dismissal. *See Eriline Co., S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006). Although Sebastian responded to the conclusory footnote (Doc. 13-1 at 7 n.1) and Defendants replied (Doc. 14 at 5 n.2), the issue is not briefed sufficiently for the Court to consider disposition. Furthermore, Defendants moved under Rule 12(b)(6) "on the grounds that Plaintiff Kay Sebastian's claims are barred by the applicable statute of limitations." (Doc. 11). Defendants do not tie their "privity" argument to their motion to dismiss. Accordingly, the Court declines to consider the merits of this potential ground for dismissal, which may be raised at the summary judgment stage.

### v.    *Conclusion*

This Court declines to dismiss any of Plaintiff Sebastian's claims at this time. However, Defendants may raise a statute of limitations defense again at summary judgment if discovery

results in additional facts which demonstrate that Sebastian subjectively knew, or should have known, of the potential connection between the Composix Kugel and any of her injuries giving rise to her claims for personal injury rooted in negligence, fraud, negligent misrepresentation, or breach of warranty prior to January 4, 2014, or the potential connection between the Composix Kugel and the injuries giving rise to her UDTPA claim prior to January 4, 2013. *See*, *e.g.*, *Hagan v. United States*, 197 F. Supp. 3d 30, 38 (D.D.C. 2016) (after denial of a defendant's motion to dismiss because the court could not conclude that claims were barred by the statute of limitations on the face of the complaint, "Defendant may, if it so chooses, raise its statute of limitations arguments once again after discovery in a motion for summary judgment"). Therefore, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim under Rule 12(b)(6) as to Plaintiff Kay Sebastian's claims is **DENIED WITHOUT PREJUDICE**.

## III.     PLAINTIFF MICHAEL DOBRZYNSKI'S CLAIMS

### A.     Standard of Review for Rule 12(b)(2) Motion

When a defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff is ultimately required to prove jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir. 1993). When, as occurs here, the court makes a determination about jurisdiction only from legal memoranda, supporting documents, and allegations from the relevant complaint, a plaintiff need only make a prima facie showing of a sufficient jurisdictional basis to survive a jurisdictional challenge. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

In order for a district court to exercise personal jurisdiction over a non-resident defendant, such jurisdiction must be authorized by (1) the long-arm statute of the state in which the district court sits; and (2) the Due Process Clause of the Fourteenth Amendment. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, a district court looks to the law of the forum state when deciding whether it has personal jurisdiction over a foreign corporation. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016); *see* Fed. R. Civ. P. 4(k)(1)(A). "The North Carolina Supreme Court has held that [N.C. Gen. Stat.] § 1-75.4(1)(d) permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Universal Leather*, 773 F.3d at 558; *see Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977) ("[I]t is apparent that the [North Carolina] General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."). Since Plaintiff Dobrzynski asserts personal jurisdiction under N.C. Gen. Stat. § 1-75.4(1)(d) (Doc. 13-1 at 9), "the traditional two-step analysis collapses into one question: is the Court's assertion of personal jurisdiction over Defendants consistent with the Due Process Clause of the Fourteenth Amendment?" *BeoCare Group, Inc. v. Morrissey*, 124 F. Supp. 3d 696, 700 (W.D.N.C. 2015); *see Universal Leather*, 773 F.3d at 558.

The Due Process Clause of the Fourteenth Amendment is satisfied for personal jurisdiction purposes if a defendant "has certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). If a court has general jurisdiction over a defendant

corporation, then any and all claims against the defendant corporation may be raised in that court, even if the cause of action is entirely distinct from the defendant corporation's activities in that court's forum state.[5]  *See Int'l Shoe*, 326 U.S. at 317-18; *Goodyear*, 564 U.S. at 919.

The Supreme Court's recent decisions in *Goodyear* and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), elevated the standard required to assert general personal jurisdiction over a foreign corporation.[6]  *See Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 242 (D.D.C. 2015) (holding that *Goodyear* and *Daimler* constitute "an intervening change in the law" of general personal jurisdiction); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("*Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation.").

Today, a court may assert general jurisdiction over a corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State."  *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear*, 564 U.S. at 919 (internal quotations omitted)).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760.  A corporation's place of incorporation or principal place of business are the "paradigm all-purpose" examples of forums where it is considered to be at home.  *Id.*  However, in "exceptional" cases, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 761 n.19; *see Brown*, 814 F.3d at 627 ("*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home'

[5]The Court notes that personal jurisdiction can also be established through specific jurisdiction.  *Goodyear*, 564 U.S. at 919.  However, Dobrzynski does not assert that specific jurisdiction exists.  Accordingly, the Court will consider only Dobrzynski's claim of general jurisdiction.
[6]A "foreign corporation" includes, as here, a "sister-state" corporation.  *Goodyear*, 564 U.S. at 918.

only where it is incorporated or maintains its principal place of business – the 'paradigm' cases."); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting, in light of *Daimler*, that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").[7]

In order for a corporation's contacts to qualify as "exceptional," its contacts to the state should be "comparable to a domestic enterprise" in that state. *Daimler*, 134 S. Ct. at 758 n.11. Furthermore, a corporation engaging in a "substantial, continuous, and systematic course of business" in a state is insufficient. *Id.* at 760-61. "[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum state." *Id.* at 761 (internal quotations omitted).

B.    Analysis

The facts construed in the light most favorable to Plaintiff Michael Dobrzynski are as follows. In 2004, Dobrzynski, a resident of Wisconsin, was implanted with a Composix Kugel in order to repair a ventral hernia. (Doc. 8 at 1, 12). In 2014, Dobrzynski began suffering from increased abdominal pain, bloating, and chills. (*Id.* at 12). As Dobrzynski's condition continued to deteriorate, he checked himself into the emergency room in December 2014. (*Id.* at 13). In January 2015, an infectious disease specialist diagnosed Dobrzynski with a "likely mesh infection." (*Id.*). Dobrzynski underwent multiple surgeries in the following months, including the removal of the Composix Kugel. (*Id.* at 13-14). Dobrzynski remained in the hospital for over two

---

[7] Dobrzynski suggests that the facts in this case closely resembles those in *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 2013 WL 1149174 (M.D.N.C. Mar. 19, 2013). *ATI Industries*, however, was decided before the Supreme Court's decision in *Daimler*.

months as a result of these operations. (*Id.* at 13-14). Dobrzynski does not allege that any event underlying the causes of action for this suit occurred in North Carolina, or that he ever entered North Carolina at any time relevant to this litigation.

Defendants argue that Dobrzynski has not met his jurisdictional burden because he has not established that Defendants have such "exceptional" ties to North Carolina that they should be considered "essentially at home" in North Carolina. (Doc. 12 at 11). Dobrzynski contends that Defendants' "substantial, systematic, and continuous contacts" to North Carolina mean that Defendants are "essentially at home" in North Carolina, subjecting them to general personal jurisdiction in North Carolina. (Doc. 13-1 at 11).

Dobrzynski argues that the following allegations, made upon information and belief, demonstrate Defendants are "essentially at home" in North Carolina. Defendant Bard maintains a registered name with the North Carolina Secretary of State and active licenses with the North Carolina Board of Pharmacy since 1999. (Doc. 8 at 9). Defendants jointly maintain a broad distribution network in North Carolina which generates a substantial amount of revenue and employs dozens of North Carolinians, receive payments from customers through a post office box in Charlotte, consistently hold training programs in Charlotte and Wilmington at designated facilities, and provide funding for research and consulting by doctors in North Carolina, including three doctors among the top ten most highly paid doctors by Davol in 2015. (*Id.*).

Dobrzynski attempts to demonstrate the uniqueness of Defendants' ties to North Carolina with statistics such as "three of . . . the top ten most highly paid doctors by Davol" and "two of just seventeen Education Centers." (*Id.*). However, "[g]eneral jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home'

would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler*, 134 S. Ct. at 762, n.20. Dobrzynski's allegations do not show that Defendants' ties are comparable to that of a North Carolina enterprise, nor do his allegations meaningfully represent that Defendants' ties to North Carolina are more substantial than their ties to other states in which Defendants do business. *See Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1006 (11th Cir. 2015) (unpublished per curiam) (finding the defendant foreign corporation was not "essentially at home" because its ordinary business activities were "far from atypical for foreign corporations."). In short, Dobrzynski's submitted statistics are "cherry-picked" and insufficient to permit this Court to conclude he has made a prima facie case of Defendants being 'essentially at home' in North Carolina.[8]

Dobrzynski also submits that Defendant Bard has registered its business name with North Carolina, and maintains pharmaceutical licenses with the North Carolina Board of Pharmacy. (Doc. 8 at 9). The obvious implication here is that Defendants' registration with the state government to conduct business in North Carolina subjects Defendants to general personal jurisdiction in North Carolina. Dobrzynski tries to support his assertion by arguing that, in states with the necessary statutory authorization, a foreign corporation's registration to do business in that state renders the corporation subject to general personal jurisdiction. (Doc. 13-1 at 12).

Dobrzynski cites *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 652-53 (E.D. Pa. 2016), in support. The court in *Bors*, while noting that the Third Circuit had not addressed whether "jurisdiction by consent" survived *Daimler*, concluded that the Pennsylvania jurisdiction statute

---

[8] For example, Dobrzynski's statistic about the top ten most highly paid doctors does not provide any information about the states of residency of the other doctors that Defendants pay, but who are not among the ten highest-paid doctors. (Doc. 8 at 9-10; Doc. 13-1 at 8-16). Dobrzynski does not allege that Defendants do not have a post office box in other states, nor does he allege that Defendants hold substantially more training programs in North Carolina than in other states. (Doc. 8 at 9-10; Doc. 13-1 at 8-16). Dobrzynski's selection of certain statistics is arbitrary, and does not reflect that Defendants are "essentially at home" in North Carolina.

in question continued to apply. 208 F. Supp. 3d at 655. The Pennsylvania statute specifically provided for jurisdiction over a corporation by consent. 42 Pa. Con. Stat. § 5301 (general jurisdiction extends to corporations that "[c]onsent, to the extent authorized by the consent").

Dobrzynski, however, has not alleged that North Carolina has a statute, either for general jurisdiction, registration or licensing, requiring a corporation to consent to personal jurisdiction prior to actually exercising its right to conduct business in North Carolina. (*See* Doc. 13-1 at 8-16). The long-arm statute he contends justifies general jurisdiction in this case, N.C. Gen. Stat. § 1-75.4(1)(d), contains no reference to jurisdiction by consent. Furthermore, Dobrzynski's argument relies on cases where the court found general jurisdiction to be appropriate due to such a consent statute and not because the act of registration, or even the conducting of business in that state, automatically made the defendant "essentially at home." *See Bors*, 208 F. Supp. 3d at 653-54 ("A court's exercise of general jurisdiction based on a corporation's consent differs from general jurisdiction established when a corporation is "essentially at home" in the forum state."). Dobrzynski cites no decision — state or federal — construing North Carolina's registration or licensing statutes to extend personal jurisdiction over registered businesses. (Doc. 13-1 at 8-16). Indeed, "the designation of a statutory agent for service of process [is] insufficient to confer jurisdiction over an out-of-state corporation." *See Public Impact, LLC v. Boston Consulting Grp., Inc.*, 117 F. Supp. 3d 732, 739 (M.D.N.C. 2015) (addressing North Carolina's registration statute) (citing *Rosenruist–Gestao E Servicos LDA v. Virgin Enters. Ltd.,* 511 F.3d 437, 446 (4th Cir. 2007) (citing *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971))). Without an indication that North Carolina statutorily requires a corporation to consent to general jurisdiction in order for that corporation to actually conduct business in North Carolina, this Court cannot find that Defendants consented to general jurisdiction in North Carolina.

Plaintiffs also allege, upon information and belief, that Defendants are subject to jurisdiction because of their broad distribution network in North Carolina which generated a substantial amount of revenue. (Doc. 8 at 9). "But this is plainly insufficient for general jurisdiction." *In re Bard IVC Filters Prods. Liab. Litig.*, 2016 WL 6393595, at \*3-\*4 (D. Ariz. Oct. 28, 2016) ("Plaintiffs argue that Defendants aggressively marketed their IVC filters in Missouri and realized substantial revenues from the State, but the Supreme Court held in *Daimler* that this is not enough for general jurisdiction"). Nor are Plaintiffs' allegations sufficient for general jurisdiction when considered along with all other jurisdictional allegations.

Even when taken together, Dobrzynski's factual allegations do not amount to a prima facie demonstration of general jurisdiction.[9] *See Combs*, 886 F.2d at 673. Therefore, this Court cannot exercise general personal jurisdiction over Defendants. Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for lack of jurisdiction pursuant to Rule 12(b)(2) is **GRANTED** as to Dobrzynski.

## IV. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1) Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction (Doc. 4) is **DENIED AS MOOT**;

(2) Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim as to Plaintiff Kay Sebastian (Doc. 11) is **DENIED WITHOUT PREJUDICE**;

(3) Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction as to Plaintiff Michael Dobrzynski (Doc. 11) is **GRANTED**; and

---

[9] This is not to say that Dobrzynski is necessarily without recourse. "Offsetting the apparent harshness of [*Daimler's*] effects, the [Supreme Court] explained its expectation that its ruling, while restrictive of general jurisdiction, still left plaintiffs with an adjudicatory forum by recourse to specific jurisdiction of courts in states bearing a relationship to the cause of action." *Brown*, 814 F.3d at 627 n.7 (citing *Daimler*, 134 S. Ct. at 758 n.10).

(4)  The Clerk is **DIRECTED** to terminate Michael Dobrzynski as a Plaintiff in this action.

Signed: August 3, 2017

Richard L. Voorhees
United States District Judge